Mark A. Ellingsen, ISB No. 4720
WITHERSPOON BRAJCICH MCPHEE, PLLC
The Spokesman-Review Building
608 Northwest Boulevard, Suite 402
Coeur d'Alene, Idaho 83814
Telephone: (208) 927-4001
Facsimile: (509) 624-6441
Email: mellingsen@workwith.com

Ronald A. Marron (pro hac vice)
Michael T. Houchin (pro hac vice)
LAW OFFICES OF RONALD A. MARRON, APLC
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
Email: ron@consumersadvocates.com
Email: mike@consumersadvocates.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CINDY MURPHY, SCOTT CONNELLY, JENNY WATSON, and ADRIANA INGRAM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KOCHAVA, INC.,<br><br>Defendant. | Case No. 2:23-cv-00058-BLW<br><br>FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–1

# I. INTRODUCTION

1. Plaintiffs Cindy Murphy, Scott Connelly, Jenny Watson, and Adriana Ingram, on behalf of themselves and all others similarly situated ("Plaintiffs") bring this action against Defendant Kochava, Inc. ("Defendant" or "Kochava") for violations of state law in connection with Kochava's acquiring of consumers' precise geolocation data and selling the data in a format that allows entities to track the consumers' movements to and from sensitive locations, including, among others, locations associated with medical care, reproductive health, religious worship, mental health, temporary shelters, such as shelters for the homeless, domestic violence survivors, or other at-risk populations, and addiction recovery. Upon information and belief, and investigation of counsel, Plaintiffs allege as follows:

# II. JURISDICTION AND VENUE

2. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendant is a citizen of a state different from that of the Plaintiffs, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

3. This Court has both general and specific personal jurisdiction over the Defendant because Defendant has conducted and continues to conduct substantial business in the State of Idaho and Defendant is headquartered in the State of Idaho.

4. This Court has specific personal jurisdiction arising from Defendant's decision to conduct business in Idaho. Defendant has sufficient minimum contacts with this State and sufficiently avails itself to the markets of this State to render the exercise of jurisdiction by this Court reasonable.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–2

5.      Venue is proper in the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District.

### III.     PARTIES

6.      Defendant Kochava, Inc. is a Delaware corporation with its principal place of business at 201 Church Street, Sandpoint, Idaho 83864. Kochava transacts or has transacted business in this District and throughout the United States.

7.      Plaintiff Cindy Murphy is a citizen of the State of Washington who resides in King County, Washington. Upon good faith information and belief, Defendant sold Plaintiff Murphy's data, including but not limited to Plaintiff's geolocation data, that Defendant acquired through Plaintiff's use of a third party application on her mobile device. Specifically, Defendant sold Plaintiff Murphy's geolocation data that it obtained, without Plaintiff's knowledge or consent, from Plaintiff's use of the Amazon phone application and other applications.

8.      Plaintiff Scott Connelly is a citizen of the State of Washington who resides in Thurston County, Washington. Upon good faith information and belief, Defendant sold Plaintiff Connelly's data, including but not limited to Plaintiff's geolocation data, that Defendant acquired through Plaintiff's use of a third party application on his mobile device. Specifically, Defendant sold Plaintiff Connelly's geolocation data that it obtained, without Plaintiff's knowledge or consent, from Plaintiff's use of the McDonald's phone application.

9.      Plaintiff Jenny Watson is a citizen of the State of California who resides in San Bernardino County, California. Upon good faith information and belief, Defendant sold Plaintiff Watson's data, including but not limited to Plaintiff's geolocation data, that Defendant acquired through Plaintiff's use of a third party application on her mobile device. Specifically,

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–3

Defendant sold Plaintiff Watson's geolocation data that it obtained, without Plaintiff's knowledge or consent, from Plaintiff's use of the McDonald's phone application.

10. Plaintiff Adriana Ingram is a citizen of the State of California who resides in San Diego County, California. Upon good faith information and belief, Defendant sold Plaintiff Ingram's data, including but not limited to Plaintiff's geolocation data, that Defendant acquired through Plaintiff's use of a third party application on her mobile device. Specifically, Defendant sold Plaintiff Ingram's geolocation data that it obtained, without Plaintiff's knowledge or consent, from Plaintiff's use of the McDonald's phone application.

## IV. FACTUAL ALLEGATIONS

**A. Kochava Sells Precise Location Information for Hundreds of Millions of Mobile Devices.**

11. Kochava is, among other things, a location data broker that provides its customers massive amounts of precise geolocation data collected from consumers' mobile devices. Through Kochava's services, customers can "[l]icense premium data" including the "precision location" of a consumer's mobile device.

12. Kochava collects a wealth of information about consumers and their mobile devices by, among other means, purchasing data from other data brokers to sell to its own customers.

13. Kochava then sells customized data feeds to its clients to, among other purposes, assist in advertising and analyzing foot traffic at stores or other locations. Among other categories, Kochava sells timestamped latitude and longitude coordinates showing the location of mobile devices. For example, in the Amazon Web Services ("AWS") Marketplace, a website

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–4

through which customers could subscribe to Kochava's data feed until approximately June 2022, Kochava displayed the following table explaining the data it sells:

| Field name | Description | Example | Data type |
|---|---|---|---|
| device_id_value | Unique device ID associated with the device | - | string |
| device_id_type | Device type associated with the device ( IDFA and ADID only ) | - | string |
| activity_timestamp | Timestamp of when the device hits the location | - | timestamp |
| latitude | Precise latitude of the device | - | string |
| longitude | Precise longitude of the device | - | string |
| horizontal_accuracy | Horizontal accuracty of the precision of the lat and lon ( in meters) | - | string |
| ip_address | IP Address of the device | - | string |

14. As noted in Kochava's explanation, each pair of timestamped latitude and longitude coordinates is associated with a "device_id_value," which is also known as a Mobile Advertising ID ("MAID"). A MAID is a unique identifier assigned to a consumer's mobile device to assist marketers in advertising to the consumer. Although a MAID may be changed by a consumer, doing so requires the consumer to proactively reset the MAID on the consumer's mobile device.

15. In describing its product in the online marketplace, Kochava has asserted that it offers "rich geo data spanning billions of devices globally." It has further claimed that its location data feed "delivers raw latitude/longitude data with volumes around 94B+ geo transactions per month, 125 million monthly active users, and 35 million daily active users, on average observing more than 90 daily transactions per device."

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–5

**B.  Kochava Provides Public Access to Consumers' Location Data.**

16. Kochava has sold access to its data feeds on online data marketplaces that are publicly accessible. Kochava typically charges a monthly subscription fee of thousands of dollars to access its location data feed but has also offered a free sample (the "Kochava Data Sample"). Kochava has made the Kochava Data Sample publicly available with only minimal steps and no restrictions on usage.

17. For example, the Kochava Data Sample was available on the AWS Marketplace until approximately June 2022. In order to access the Kochava Data Sample on the AWS Marketplace, a purchaser needed a free AWS account. A purchaser would then search the AWS marketplace for "Kochava," which resulted in two available datasets appearing – a $25,000 location data feed subscription and the Kochava Data Sample.

18. The Kochava Data Sample consisted of a subset of the paid data feed, covering a rolling seven-day period. It was formatted as a text file, which could be converted into a spreadsheet. Put into a spreadsheet, one day of the Kochava Data Sample contained over 327,480,000 rows and 11 columns of data, corresponding to over 61,803,400 unique mobile devices.

19. When an AWS purchaser clicked on the "subscribe" button for the Kochava Data Sample feed, the purchaser was directed to a screen that included a "Subscription terms" notification that stated that the Kochava Data Sample "has been marked by the provider [i.e., Kochava] as containing sensitive categories of information:"

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–6

> **2a. Subscription terms**
>
> ⓘ This product has been published as part of the Extended Provider Program and has been marked by the provider as containing sensitive categories of information. The Extended Provider Program is in Preview and subject to Section 2 of the AWS Service Terms ☑ ("Betas and Previews").
>
> By submitting this subscription request, you agree that your use of this product is subject to the provider's offer terms including pricing information and Data Subscription Agreement ☑.
>
> You also agree and acknowledge that AWS may share information about this transaction (including your payment terms and product usage metrics) with the respective seller, reseller or underlying provider, as applicable, in accordance with the AWS Privacy Notice ☑. AWS will issue invoices and collect payments from you on behalf of the provider through your AWS account. Your use of AWS services remains subject to the AWS Customer Agreement ☑ or other agreement with AWS governing your use of such services.

20. Below this notice, a form was displayed, requesting the purchaser's company name, name of the purchaser, email address, and intended use case:

> Company name
> The legal entity that will use the product.
>
> [ AnyCompany ]
>
> 0 out of 40 characters maximum.
>
> Name
> The name of the company's contact person.
>
> [ Jane Doe ]
>
> 0 out of 40 characters maximum.
>
> Email address
> The email address of the company's contact person.
>
> [ janedoe@example.com ]
>
> 0 out of 100 characters maximum.
>
> Intended use case
> Your intended use case for the data product, including any comments that the provider might find relevant to approving your subscription request.
>
> [ We will be using this data product for an academic research project supervised by Jane Doe. ]
>
> 0 out of 500 characters maximum.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–7

21.     A purchaser could use an ordinary personal email address and describe the intended use simply as "business." The request would then be sent to Kochava for approval. Kochava has approved such requests in as little as 24 hours.

22.     Once Kochava approved the request, the purchaser was notified by email and then gained access to the data, along with a data dictionary explaining the categories of data provided.

23.     The Kochava Data Sample included precise location data gathered in the seven days prior to the date Kochava approved the subscription request.

**C.    Kochava's Data Can Be Used to Identify People and Track Them to Sensitive Locations.**

24.     Precise geolocation data associated with MAIDs, such as the data sold by Kochava, may be used to track consumers to sensitive locations, including places of religious worship, places that may be used to infer an LGBTQ+ identification, domestic abuse shelters, medical facilities, and welfare and homeless shelters. For example, by plotting the latitude and longitude coordinates included in the Kochava data stream using publicly available map programs, it is possible to identify which consumers' mobile devices visited reproductive health clinics. Further, because each set of coordinates is time-stamped, it is also possible to identify when a mobile device visited the location. Similar methods may be used to trace consumers' visits to other sensitive locations.

25.     The location data provided by Kochava is not anonymized. It is possible to use the geolocation data, combined with the mobile device's MAID, to identify the mobile device's user or owner. For example, some data brokers advertise services to match MAIDs with "offline" information, such as consumers' names and physical addresses.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–8

26. Even without such services, however, location data can be used to identify people. The location data sold by Kochava typically includes multiple timestamped signals for each MAID. By plotting each of these signals on a map, much can be inferred about the mobile device owners. For example, the location of a mobile device at night likely corresponds to the consumer's home address. Public or other records may identify the name of the owner or resident of a particular address. Indeed, Kochava has recognized that its data may be used to track mobile devices to home addresses. In its marketing on the AWS Marketplace, it has suggested "Household Mapping" as a potential use case of the data:

**HOUSEHOLD MAPPING:**
Group devices by dwelling time and frequency at shared locations to map individual devices to households.

27. Kochava employs no technical controls to prohibit its customers from identifying consumers or tracking them to sensitive locations. For example, it does not employ a blacklist that removes from or obfuscates in its data set location signals around sensitive locations including, among others, locations associated with medical care, reproductive health, religious worship, mental health, temporary shelters, such as shelters for the homeless, domestic violence survivors, or other at-risk populations, and addiction recovery.

**D.  Kochava's Practices Cause and Are Likely to Cause Substantial Injury to Consumers.**

28. As described above, the data sold by Kochava may be used to identify individual consumers and their visits to sensitive locations. The sale of such data poses an unwarranted intrusion into the most private areas of consumers' lives and causes or is likely to cause substantial injury to consumers.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–9

29. For example, the data may be used to identify consumers who have visited an abortion clinic and, as a result, may have had or contemplated having an abortion. In fact, in just the data Kochava made available in the Kochava Data Sample, it is possible to identify a mobile device that visited a women's reproductive health clinic and trace that mobile device to a single-family residence. The data set also reveals that the same mobile device was at a particular location at least three evenings in the same week, suggesting the mobile device user's routine. The data may also be used to identify medical professionals who perform, or assist in the performance, of abortion services.

30. As another example, the data could be used to track consumers to places of worship, and thus reveal the religious beliefs and practices of consumers. In fact, the Kochava Data Sample identifies mobile devices that were located at Jewish, Christian, Islamic, and other religious denominations' places of worship.

31. As another example, the data could be used to track consumers who visited a homeless shelter, domestic violence shelter, or other facilities directed to at-risk populations. This information could reveal the location of consumers who are escaping domestic violence or other crimes. In addition, because Kochava's data allows its customers to track consumers over time, the data could be used to identify consumers' past conditions, such as homelessness. In fact, the Kochava Data Sample identifies a mobile device that appears to have spent the night at a temporary shelter whose mission is to provide residence for at-risk, pregnant young women or new mothers.

32. As another example, the data could be used to track consumers who have visited addiction recovery centers. The data could show how long consumers stayed at the center and whether a consumer relapses and returns to a recovery center.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–10

33. Identification of sensitive and private characteristics of consumers from the location data sold and offered by Kochava injures or is likely to injure consumers through exposure to stigma, discrimination, physical violence, emotional distress, and other harms.

34. These injuries are exacerbated by the fact that, as described above, Kochava lacks any meaningful controls over who accesses its location data feed, including the Kochava Data Sample.

35. The collection and use of their location data are opaque to consumers, who typically do not know who has collected their location data and how it is being used. Indeed, once information is collected about consumers from their mobile devices, the information can be sold multiple times to companies that consumers have never heard of and never interacted with. Consumers have no insight into how this data is used – they do not, for example, typically know or understand that the information collected about them can be used to track and map their past movements and that inferences about them and their behaviors will be drawn from this information. Consumers are therefore unable to take reasonable steps to avoid the above-described injuries.

36. The harms described above are not outweighed by countervailing benefits to consumers or competition. Defendant could implement safeguards to remove data associated with sensitive locations from its data feeds. Such safeguards could be implemented at a reasonable cost and expenditure of resources.

## V. CLASS ACTION ALLEGATIONS

37. Plaintiffs seek to represent a class defined as all persons in the United States whose data, including but not limited to their geolocation data, was sold by Defendant without their consent (the "Class").

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–11

38. Plaintiffs Cindy Murphy and Scott Connelly also seek to represent a subclass defined as all Class members who reside in the State of Washington whose data, including but not limited to their geolocation data, was sold by Defendant without their consent (the "Washington Subclass").

39. Plaintiffs Jenny Watson and Adriana Ingram also seek to represent a subclass defined as all Class members who reside in the State of California whose data, including but not limited to their geolocation data, was sold by Defendant without their consent (the "California Subclass").

40. Plaintiffs reserve the right, following additional information obtained through discovery, to modify or narrow by an amended complaint, or at class certification, the foregoing class definitions.

41. Members of the Class, the Washington Subclass, and the California Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class, the Washington Subclass, and the California Subclass number in the millions. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

42. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include but are not limited to whether Defendant's sale of geolocation data without consent has violated state law.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–12

43. The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs' data was, upon good faith information and belief, sold by Defendant without their consent, and the named Plaintiffs suffered injury as a result of Defendant's conduct.

44. Plaintiffs are adequate representatives of the Class and the Subclasses because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

45. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–13

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### UNJUST ENRICHMENT

46. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

47. Plaintiffs bring this claim individually and on behalf of members of the Class, the Washington Subclass, and the California Subclass against Defendant.

48. Plaintiffs and Class members unwittingly conferred a benefit upon Defendant. Defendant acquired valuable personal location information belonging to Plaintiffs and Class members which it then sold to other parties without the consent of Plaintiffs and Class members. Plaintiffs and Class members received nothing from this transaction.

49. Defendant received the benefit of Plaintiffs' and the Class Members' personal location data at the expense of Plaintiffs and the Class Members.

50. Defendant has been unjustly enriched in retaining the revenues derived from the sale of Plaintiffs' and Class members' data, including their geolocation data. Retention of those moneys under these circumstances is unjust and inequitable because Defendant did not obtain the consent of Plaintiffs and Class members before selling their data to third parties as described above.

51. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–14

## SECOND CAUSE OF ACTION

**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**RCW 19.86.010,** *et seq.*

52.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

53.     Plaintiffs Cindy Murphy and Scott Connelly bring this claim individually and on behalf of the Washington Subclass against Defendant.

54.     The Washington Consumer Protection Act ("WCPA") makes it unlawful to commit "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." REV. CODE WASH. ANN. § 19.86.020. The WCPA provides a private right of action for "[a]ny person who is injured in his or her business or property" by violations of the Act. REV. CODE WASH. ANN. 19.86.090.

55.     In the course of the Defendant's business, it knowingly and intentionally sold Plaintiffs' and the Class Members' personal information, including geolocation data, as described above.

56.     Defendant's actions as set forth above occurred in the conduct of trade or commerce and constitute unfair or deceptive trade practices under the WCPA. Defendant's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others whose personal data was sold by Defendant. Defendant's conduct has the capacity to, and has actually caused injury not only to Plaintiffs, but to thousands of others in Washington and around the country.

57.     Plaintiffs and the Class were injured as a result of the Defendant's conduct and suffered ascertainable monetary loss.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–15

58. Plaintiffs seek an award of actual damages, treble damages, attorney's fees and costs, and injunctive relief as permitted by the WCPA. REV. CODE WASH. ANN. § 19.86.090.

### THIRD CAUSE OF ACTION

**VIOLATIONS OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT
Cal. Penal Code § 502**

59. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

60. Plaintiffs Jenny Watson and Adriana Ingram bring this claim individually and on behalf of the California Subclass against Defendant.

61. The California Legislature enacted the Computer Data Access and Fraud Act ("CDAFA") with the intent "to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code §502.

62. Plaintiffs' and the class members' smartphone constitute "computers" within the meaning of the CDAFA.

63. Defendant knowingly accessed and without permission made use of data from Plaintiffs' and the class members' smartphones in order to willfully obtain money and data in violation of California Penal Code § 502(c)(1).

64. Defendant knowingly accessed and without permission, took, copied, and made use of data from Plaintiffs' and the Class Members' smartphones in violation of California Penal Code § 502(c)(2).

65. Defendant knowingly and without permission accessed data from Plaintiffs' and the Class Members' smart phones in violation of California Penal Code § 502(c)(7).

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–16

66. As a direct and proximate result of Defendant's violation of the CDAFA, Plaintiffs and the Class Members suffered damages.

67. Plaintiffs seeks compensatory, injunctive, and equitable relief as well as attorneys' fees, costs of suit, and punitive or exemplary damages pursuant to California Penal Code § 502(e) as a result of Defendant's violations of the CDAFA.

### FOURTH CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200

68. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

69. Plaintiffs Jenny Watson and Adriana Ingram bring this claim individually and on behalf of the California Subclass against Defendant.

70. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

71. Defendant's conduct with respect to tracking Plaintiffs' and the Class Members' geolocation data was unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

72. Defendant's conduct with respect to tracking Plaintiffs' and the Class Members' geolocation data was also unfair because it violated public policy as declared by specific statutory or regulatory provisions, including but not limited to the CDAFA.

73. Defendant's conduct with respect to tracking Plaintiffs' and the Class Members' geolocation data was also unfair because the consumer injury was substantial, not outweighed by

benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

74. The acts alleged herein are also "unlawful" under the UCL because they violate the CDAFA as discussed above.

75. Defendant profited from the sale of Plaintiffs' and the Class Members' geolocation data.

76. Plaintiffs seek injunctive relief and restitution on behalf of the California Subclass as a result of Defendant's violations of the UCL.

## VII. PRAYER FOR RELIEF

77. Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Defendant as to each and every cause of action, and the following remedies:

(a) An Order declaring this action to be a proper class action, appointing Plaintiffs as the class representatives, and appointing their undersigned counsel as class counsel;

(b) An Order requiring Defendant to bear the cost of class notice;

(c) An Order enjoining Defendant from engaging in the unfair business practices complained of herein;

(d) An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

(e) An Order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre-and post-judgment interest thereon;

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–18

(f) An Order requiring Defendant to pay all actual damages, treble damages, and statutory damages, plus pre- and post-judgment interest thereon, permitted under the causes of action alleged herein;

(g) An award of attorneys' fees and costs; and

(h) Any other and further relief that Court deems necessary, just, or proper.

## VIII. JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

DATED this 7th day of April, 2023.

WITHERSPOON BRAJCICH MCPHEE, PLLC

Mark A. Ellingsen
*Attorneys for Plaintiffs and the Proposed Classes*

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–19

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of April, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Craig J. Mariam<br>GORDON REES SCULLY MANSUKHANI, LLP<br>999 W. Main Street, Suite 100<br>Boise, ID  83702 | cmariam@grsm.com<br>ajennings@grsm.com<br>ekuzminova@grsm.com<br>jfarrar@grsm.com |

    *Attorneys for Defendant*

| | |
|---|---|
| Michael T. Houchin<br>LAW OFFICES OF RONALD A. MARRON, APLC<br>651 Arroyo Drive<br>San Diego, CA  92103 | mike@consumersadvocates.com |

    *Admitted Pro Hac Vice*

/s/ Mark A. Ellingsen
Mark A. Ellingsen

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL–20