**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
NORTHERN (COEUR D'ALENE) DIVISION**

| | |
|---|---|
| CINDY MURPHY, SCOTT CONNELLY, JENNY WATSON, ADRIANA INGRAM, DAVID GREENLEY, SHAHNAZ ZARIF, SHERI BATE and JULIE MAATTALA individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KOCHAVA, INC., <br><br> Defendant. | Case No.: 2:23-cv-00058-BLW <br><br> Hon B. Lynn Winmill |

**UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION.

Plaintiffs Cindy Murphy, Scott Connelly, Jenny Watson, Adriana Ingram, Shahnaz Zarif, Sheri Bate, and Julie Maattala ("Plaintiffs" or "Class Representatives") move unopposed for an order granting preliminary approval of the Class Action Settlement Agreement they have reached with Kochava, Inc. ("Kochava" or "Defendant").[1]

Plaintiffs allege, and Kochava denies, that Kochava is in possession of location data acquired, generally, from third parties located in a repository. in its possession. Plaintiffs further allege that data purchasers of such repository data thus could deanonymize Kochava's data, allowing them to track consumers' movements to and from sensitive locations, including, among

---

[1] Kochava does not oppose this motion and has agreed to and executed the Settlement Agreement, including the injunctive and remedial measures therein.  Consistent with the Settlement Agreement, Kochava does not admit liability and denies any statement in this motion suggesting otherwise.

other, locations associated with medical care, reproductive health, religious worship, mental health, temporary shelters, and addiction recovery. Following extensive investigation by their respective counsel and consultation with industry experts, Plaintiffs brought suit to remedy these practices. Plaintiffs are pleased to report that their efforts were successful.

Indeed, the Settlement now before this Court—one reached through arm's-length, and at times combative, negotiations overseen by one of the nation's preeminent mediators, and informed by extensive discovery and information sharing—requires Kochava to immediately remediate the alleged business practices that gave rise to this Action. Specifically, the Settlement provides, *inter alia*, that for a period of at least two (2) years following final approval:

- Kochava and its affiliates will implement safeguards to ensure geolocation data pertaining to "Sensitive Locations" is not distributed or used.

- Kochava will utilize industry best practices to delete a consumer's Covered Information upon their submission of a simple web form "opting out" of data collection by Kochava, and place those same consumers on a "blacklist" to ensure their data is not collected or used in any way in the future.

- Kochava will permanently delete any Covered Information its SDKs collected for Kochava's sole benefit, to the extent such data exists.

Critically, Plaintiffs secured these concrete and substantial business practice changes and injunctive relief **without releasing any Settlement Class Member's claims for damages or other monetary relief**. As elaborated upon below, Kochava disclosed in the course of settlement discussions that it lacks adequate insurance coverage for the claims asserted in this Action, and that its financial condition both precluded a monetary settlement and virtually guaranteed Kochava would cease to operate if Plaintiffs prevailed. Accordingly, the parties have negotiated a Settlement

Agreement that redresses the conduct underlying Kochava's alleged privacy violations and ensures that it may not resume the challenged conduct without safeguards as contained herein, while leaving Settlement Class Members' damages claims unimpaired.

For these reasons, Plaintiffs submit that this Settlement is fair, reasonable, and adequate, and respectfully request that the Court (1) grant preliminary approval of the proposed class action settlement described in detail in the Class Action Settlement Agreement (the "Agreement" or "S.A.") attached to the Joint Declaration of Gary M. Klinger, Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg"), Daniel O. Herrera, Cafferty Clobes Meriwether & Sprengel LLP, Kas L. Gallucci, Law Offices of Ronald A. Marron, and Julian Diamond, Bursor & Fisher, P.A. ("Plaintiffs' Counsel Joint Declaration") as **Exhibit 1**, (2) for settlement purposes, conditionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(2), (3) appoint Gary M. Klinger, Milberg Coleman Bryson Phillips Grossman, PLLC; Daniel O. Herrera, Cafferty Clobes Meriwether & Sprengel LLP; Kas L. Gallucci, Law Offices of Ronald A. Marron; and Julian Diamond, Bursor & Fisher, P.A. as Class Counsel, and (4) approve the proposed Notice Program[2] described in the Settlement Agreement.

## II.    PROCEDURAL BACKGROUND

On February 1, 2023, Plaintiff Cindy Murphy initiated this action against Kochava.[3] Dkt. No. 1; Plaintiffs' Counsel Joint Declaration ¶ 8. Plaintiff Murphy alleged Kochava violated her

---

[2] Capitalized terms that are otherwise undefined have the same meaning as in the Settlement Agreement.

[3] Two related class actions brought claims arising from the same alleged conduct:  one filed in the District Court for the Southern District of California, styled *Greenley et al. v. Kochava, Inc.* Case No. 3:22-cv-01327-BAS-AHG (Filed September 6, 2022), and the second filed in the District Court for the District of Massachusetts, styled *Maatala v. Kochava Inc.,* Case No. 1:22-VC-11473-IT (Filed September 12, 2022). The Settlement Agreement is entered into by Plaintiffs in those actions as well, who recently dismissed their respective lawsuits and joined this action through the Second Amended Class Action Complaint filed on January 30, 2025.

rights and those of similarly situated consumers by acquiring their precise geolocation data and selling it in a format that allows purchasers to track consumers' movements to and from sensitive locations. On April 7, 2023, Ms. Murphy filed a First Amended Class Action Complaint adding three representative Plaintiffs; all material allegations otherwise remained the same. Dkt. No. 13; Plaintiffs' Counsel Joint Declaration ¶ 9.

On April 20, 2023, Kochava moved to dismiss under Rule 12(b)(6) on grounds Plaintiffs failed to state a claim upon which relief could be granted and lacked standing. Dkt. No. 14, Plaintiffs' Counsel Joint Declaration ¶ 10. Plaintiffs opposed that motion. *Id.* On October 2, 2023, the Court denied the majority of Defendant's motion to dismiss, finding that Plaintiffs had standing and sustaining their claims for unjust enrichment and violations of the California Data Access and Fraud Act. Dkt. No. 18; Plaintiffs' Counsel Joint Declaration ¶ 11.

Kochava first informed Plaintiffs' Counsel of its financial position in November 2023. Plaintiffs' Counsel Joint Declaration ¶ 13. Nevertheless, between November 2023 and June 2024, Plaintiffs in the *Greenley*, *Maattala*, and *Murphy* actions each devoted significant resources to their respective cases and pressed their claims. *Id.* Plaintiffs engaged in extensive discovery, including serving and responding to requests for production of documents and interrogatories; collecting, imaging and negotiating the production of data from certain Plaintiffs' mobile devices; discussing the timing of likely Rule 30(b)(6) depositions; negotiating orders and stipulations that would govern discovery; and meeting and conferring about the foregoing. *Id.*

Ultimately, discovery revealed a considerable risk of non-recovery were Plaintiffs to pursue their claims to class certification, summary judgment, and beyond. *Id.* ¶ 14. Accordingly, the Parties agreed to mediation before Antonio Piazza, one of the nation's longest tenured and most esteemed mediators. *Id.* Prior to the mediation, the Parties exchanged additional discovery

regarding, *inter alia*, the merits of the case, Defendant's lack of adequate insurance coverage, and Defendant's ability to fund a class action settlement under Fed. R. Civ. P. 23(b)(3). *Id.*

On June 3, 2024, the Parties attended an all-day—and at times intensely adversarial— in person mediation with Mr. Piazza, at which time they reached agreement in principle on all material terms. *Id* ¶ 15. The Parties then spent months negotiating the terms of the executed Settlement Agreement now before this Court. *Id.*

## III.    SUMMARY OF THE SETTLEMENT TERMS

The Settlement requires Kochava to do the following: (1) undertake the remedial measures described below; (2) be bound by the injunctive relief described below; (3) pay the costs of the class notice and administration; (4) pay a Service Award to each of the Plaintiffs approved by the Court of no more than $17,500 total ($2,500 each); and (5) pay attorneys' fees and expenses approved by the Court not to exceed $1,500,000. *See* S.A. §§ 3-6.

### A.  The Settlement Class Encompasses Everyone Injured by the Privacy Intrusions Plaintiff Alleges Within the Statute of Limitations Period.

The "Settlement Class" is defined as:

> All persons over the age of 18 in the United States whose data, including but not limited to their geolocation data, was sold by Kochava without their consent.

### B.  Kochava has agreed to Significant Injunctive Relief

The Settlement will require Kochava to implement immediately six (6) significant business practice changes that will ensure the privacy violations at the heart of this action are fully remediated and do not recur. *See* SA § 3.1 *First*, Kochava and related corporate entities, including Collective Data Solutions, LLC, will fully implement a "privacy block": data filtering software and other internal processes that will prevent the distribution of, or use by, Kochava of raw location data associated with "Sensitive Locations." *Id. Second,* Kochava will continue to ensure that any

Location Data it collects through its SDKs will be used exclusively for the benefit of that the third-party application client in whose app the SDK was embedded. *Id*. In other words, only the app developer for whose benefit Location Data is collected may make use of that data, and Kochava will continue to not directly profit from the collection thereof. *Id*. *Third*, Kochava will follow industry best practices to permanently delete any data previously collected by its SDKs for Kochava's sole benefit, to the extent such data exists. *Id*. *Fourth,* Kochava will implement an opt-out mechanism—including a web-hosted form—through which consumers can demand that their Covered Information be removed from the Kochava Collective database pursuant to industry best practices. *Id*. All consumers who opt-out also will be added to a "blacklist," which will prevent all future ingestion, use, and/or sale by Kochava of any Covered Information associated with those consumers, including for machine learning purposes. *Id*. *Fifth,* Kochava will be restrained and enjoined from misrepresenting in advertising, either expressly or by implication, the extent to which Kochava collects, uses, maintains, discloses, deletes or deidentifies Covered Information. *Id*. *Finally,* within 180 days of final approval Kochava will request from each of its data suppliers representative examples of underlying consumer consent prompts. *Id*. Kochava will then cease using any Location Data collected from consumers who have not consented to the collection, dissemination and/or use thereof.

### C.  The Settlement Does Not Release Settlement Class Members' Damages.

In exchange for undertaking the above described relief, Kochava will receive a full release of any and all claims asserted in the Action, and any claim, liability, right, demand, suit, matter, obligation, action, or causes of action, of every kind and description, that the Releasing Parties have or could have presented or asserted against Kochava arising out of or reasonably relating to the operative factual predicate alleged in or otherwise described by Plaintiffs' complaint in the

Action. *Id.* §§ 7.1-7.3. However, because Plaintiffs seek approval and conditional class certification pursuant only to Rule 23(b)(2), the Released Claims "*do not include claims for damages or other monetary relief*" and "do not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement." *Id*. (emphasis added)*.*

### D.  The Proposed Notice Program Is Calculated to Afford Ample Notice.

While class notice is not required for purely injunctive settlements under Rule 23(b)(2) (*see supra* at p. 28), the Settlement Agreement nevertheless provides for a robust online notice campaign and a settlement website. The Parties propose, subject to Court approval, that Angeion Group, LLC ("Angeion") be appointed as Notice Administrator. Plaintiffs' Counsel Joint Decl. ¶ 35. Angeion has ample experience in class action administration. *See* Plaintiffs' Counsel Joint Decl. at Ex. 2, ¶¶ 9-11. As Notice Administrator, Angeion shall be responsible for effectuating the Notice Program (described below) consistent with the terms of the Settlement Agreement, as approved by the Court. *Id.*, S.A. § 5.

The Notice Program shall include a case-specific Settlement Website (*e.g.*, www.KochavaPrivacySettlement.com) and will include at least the following information: (i) stand-alone descriptions of the injunctive relief and business practice changes; (ii) a summary of the Action and the Settlement terms; (iii) a "Contact Us" page with the Notice Administrator's contact information; (iv) the Settlement Agreement, motions for approval and for attorneys' fees, the Third Amended Complaint and all other important documents in the case; (v) important case dates and deadlines, including the objection deadline; (vi) a summary of Settlement Class Members' rights, including how to object to the Settlement; and (vii) the date, time, and location of the Final Approval hearing. *Id.* § 5.2. In addition, the Notice Program will establish a toll-free

telephone line with an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week. *Id.* § 5.3. The Program will publicize notice via fair well-crafted banner ads to direct attention to the Settlement Website and reach Settlement Class Members on selected websites, social media platforms, or apps where Settlement Class Members are likely to visit. *Id.*

Kochava shall have the sole responsibility to pay for and fund the Notice Program, including all fees and expenses of the Notice Administrator. *Id.* § 5.5.

### E.  Counsel Will Apply for Class Representative Service Awards.

Plaintiffs devoted significant energy and resources to the Action. Plaintiffs provided information to their counsel that informed the class action complaints and, thereafter, regularly communicated with counsel about strategy and major case developments throughout the litigation. Plaintiffs' Counsel Joint Decl. ¶ 27. Plaintiffs participated in discovery, responded to interrogatories, and produced documents in response to requests for production. *Id.* ¶¶ 58-60. Certain Plaintiffs also forfeited their devices to facilitate their preservation and forensic imaging, as well as further analysis by Plaintiffs' consulting expert. *Id.* ¶ 60. Further, Plaintiffs showed willingness and engagement throughout the mediation process, receiving appropriate updates about the status of mediation and understanding why the Settlement terms were appropriate under the circumstances of this case. *Id.* ¶ 60.

In recognition of these facts, if Plaintiffs are appointed Class Representatives and their counsel are appointed Class Counsel, counsel will apply for a Service Award for the Class Representatives in the amount of $2,500 each (total $17,500) in recognition for their service as Class Representatives in the Action *Id.* S.A. § 6.1.

**F. Counsel Will Apply for a Reasonable Fee Award and Reimbursement of Reasonable Litigation Expenses.**

If Plaintiffs' counsel are appointed Class Counsel, they will apply for a fees and costs award not to exceed $1,500,000 to cover their attorneys' fees and reasonable litigation expenses. S.A. § 6.1. This sum is approximately equivalent to Plaintiffs' counsels' fees and costs in this matter. The Parties did not address the issue of attorneys' fees and expenses until after they had reached agreement in principle on the Settlement's substantive terms, including the proposed injunctive relief and the recognition of remedial measures. *Id*. § 6.3. The Settlement Agreement is in no way contingent upon the Court's award of attorneys' fees and costs. *Id*. § 6.3. Indeed, the Parties have agreed to accept as final, and not appeal, any award of attorneys' fees and costs up to the $1,500,000 cap. *Id*. Plaintiffs will file a formal motion for approval of fees and costs before their motion for final approval of the Settlement and before the end of the objection period. *See* Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 54(d)(2).

## IV.    PROPOSED SCHEDULE OF EVENTS

Consistent with the Settlement Agreement, the Parties respectfully propose the following schedule for the various Settlement events:

| Event | Date |
|---|---|
| Deadline for Settlement Website and IVR to go live | 21 calendar days following entry of Preliminary Approval |
| Deadline to commence Notice Program ("Settlement Notice Date") | 30 calendar days following entry of Preliminary Approval and to be substantially completed 45 days following entry of Preliminary Approval |
| Deadline for Plaintiffs' application for attorneys' fees and costs and a Service Award | 75 calendar days following entry of Preliminary Approval |
| Deadline for objections[4] to be postmarked | 90 calendar days following entry of Preliminary Approval |
| Deadline for Plaintiffs to file their Final | 14 calendar days prior to Final Approval |

---

[4] There is no ability to opt out of a Rule 23(b)(2) settlement.

| Approval Motion | Hearing |
|---|---|
| Deadline for Parties to file all papers in response to any timely and valid objections | 14 calendar days prior to Final Approval Hearing |
| Final Approval hearing | At least 115 calendar days after entry of Preliminary Approval |

## V.    APPLICABLE LEGAL STANDARDS

Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
     (i) the costs, risks, and delay of trial and appeal;
     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
     (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

*Turney, et al., v. Henry Atencio, et al.*, No. 1:18-CV-00001-BLW, 2022 WL 79821, at *3 (D. Idaho Jan. 6, 2022) (quoting Fed. R. Civ. P. 23(e)(2)).

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). "In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Servs., Inc*., No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). As to the procedural component, "a presumption of fairness applies when settlements are negotiated at

arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transps. Inc*., No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pac. Gas & Elec. Co*., 266 F.R.D. 468, 479 (E.D. Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

## VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

### A.  The Settlement Is Procedurally Fair.

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B). In assessing adequacy of representation, the court focuses on whether "(1) [] the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*, 277 F.R.D. 586, 596 (S.D. Cal. 2011).

Plaintiffs' interests are aligned with the Class: each suffered the same alleged injury and have the same interest in securing remedial and injunctive relief resulting in the cessation of the collection and possession of their sensitive Location Data. Moreover, the remedial and injunctive relief applies uniformly to benefit all members of the Settlement Class. Thus, there is no conflict between Plaintiffs and the members of the Settlement Class.

A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, No. 1:14-cv-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). In addition, Plaintiffs' counsel are highly qualified. *See e.g.*, *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). They have extensive experience and knowledge in prosecuting similar consumer class actions, particularly those involving privacy violations. *See* Plaintiffs' Counsel Joint Decl. ¶¶ 41-57 (attaching firm resumes as Exhibits 3-6). Moreover, Plaintiffs' counsel dedicated significant time and resources to the prosecution and settlement of this Action. As set forth above, Plaintiffs engaged in extensive

factual investigation and discovery prior to mediation, including formal and informal discovery regarding the merits of the case, class certification, and Defendant's ability to fund a class action settlement under Rule 23(b)(3). *See also* Plaintiffs' Counsel Joint Decl. ¶¶ 7-15. Between November 2023 and June 2024, the Parties engaged in significant offensive discovery, including participating in several meet and confers with Kochava concerning their respective discovery responses. *Id.* ¶ 13. Plaintiffs also responded to the discovery Kochava propounded on them, which required working with consultants to forensically image and analyze certain Plaintiffs' mobile devices. *Id.*

The Parties agreed to mediate based in part on Defendant's suggestion that it would not be able to pay a damages judgment under Rule 23(b)(3). Defendant provided documents concerning its financial condition and inability to fund a class action settlement. *Id.*

This thoroughness and consistent adversarial posture favors preliminary approval. *See, e.g., Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *6 (S.D. Cal. June 1, 2010) ("the parties' extensive investigation, discovery, and subsequent settlement discussions weigh heavily in favor of granting final approval."); *Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("Where, as here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel over an "extended period of time," those facts will weigh in favor of approval."). This factor thus favors preliminary approval of the Settlement.

In sum, Plaintiffs' interests are aligned with the interests of Settlement Class Members. Plaintiffs' counsel had the ability to, and did, thoroughly and effectively represent the interests of the Settlement Class throughout the adversarial litigation and the mediation process. As such, the Settlement satisfies Rule 23(e)(2)(A) and (B) and is thus procedurally fair. *Nat'l Rural Telecom*,

221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."); *see also Hashemi v. Bosley, Inc.*, No. C 21-946 PSG (RAOx), 2022 WL 2155117, at *6 (C.D. Cal. Feb. 22, 2022) ("The parties extensively negotiated the Settlement over several months prior to mediation and ultimately reached a final agreement only after arms-length negotiations before mediator Mr. Picker."); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (explaining that while the "mere presence of a neutral mediator... is not on its own dispositive," it is "a factor weighing in favor of a finding of non-collusiveness"). Accordingly, the fifth (extent of discovery completed), sixth (views of counsel), and ninth (lack of collusion) *In re Bluetooth* factors are satisfied.

### B. The Relief Provided to the Settlement Class Is Adequate.

Next, the Court must assess the Settlement's substantive fairness. Rule 23(e)(2)(C) enumerates four factors to be considered when assessing whether the relief provided to the Settlement Class is adequate: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." *Legere-Gordon v. Firstcredit Inc.*, No. 1:19-CV-360 WBS, 2021 WL 2269503, at *4 (D. Idaho June 2, 2021).

#### 1. The Strength of Plaintiffs' Case and the Costs, Risks, and Delay of Trial and Appeal.

Rule 23(e)(2)(C)(i) first requires courts to consider "the costs, risks, and delay of trial and appeal." "A[ ] central concern [when evaluating a proposed class action settlement] ... relate[s] to the cost and risk involved in pursuing a litigated outcome." *Walker v. Life Ins. Co. of the Sw.*, No. CV109198JVSJDEX, 2021 WL 1220692, at *8 (C.D. Cal. Feb. 22, 2021) (quoting Fed. R. Civ. P.

23(e), 2018 Advisory Committee Notes). The relevant *Bluetooth* factors here include "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; and (4) the amount offered in settlement."

While Plaintiffs believe they have strong claims, their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L (WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, *Inc.*, No. 5:15-cv-01437-ODW (DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017).

And though Plaintiffs' cases survived Defendant's Motions to Dismiss, in part, the Parties have not briefed, and the Court has not yet certified, any class treatment of this case. If they were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. The risk of maintaining class status through trial in this Action is significant. Such a determination would only be reached after additional first- and third-party discoveries, and exhaustive briefing. If the Court were to determine that statutory damages could not be imposed on a class wide basis, there is a risk that individualized damages determinations would overwhelm the common issues. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK (MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014).

Additionally, even if the Court were to certify the Class (and deny efforts to decertify it thereafter), Kochava has expressed a desire to seek appellate review of this Court's interlocutory decisions, so even an initially favorable result would likely be delayed and possibly defeated by Kochava's Rule 23(f) petition. Finally, even if Plaintiffs obtained a judgment on behalf of the Class consistent with the claimed damages, the Class would likely never recover on that judgment because Kochava does not have sufficient funds to satisfy such a judgment. The Settlement Agreement eliminates these risks while providing significant relief to the Settlement Class.

Additionally, Plaintiffs' liability proof may involve first- and third-party discovery (via Kochava and any of the apps/app developers utilizing the Kochava SDK). Finally, proof of actual damages would likely involve substantial exploration of how both Kochava and any other third-party apps utilize the location data they store/receive. Moreover, had litigation continued, the Parties would likely have retained expensive forensics and other testifying experts for class certification, summary judgment, and trial, resulting, at minimum, in protracted *Daubert* briefing. By reaching a favorable settlement with the assistance of a neutral mediator, the Parties avoided even more significant expense and delay.

Accordingly, "Plaintiffs' strong claims are balanced by the risk, expense, and complexity of their case, as well as the likely duration of further litigation." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 WL 6248426, at *11 (N.D. Cal. Oct. 25, 2016). "Settlement is favored in cases [such as this one] that are complex, expensive, and lengthy to try." *Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)). Thus, the litigation risks and potential for substantial delay support approval of the Settlement Agreement here.

### 2. The Relief Afforded under the Settlement Agreement and Release

With respect to the relief offered in settlement, here Class Members receive the benefits of the injunctive relief and business practice changes while still retaining their individual right to pursue claims for damages against Kochava. *Legere-Gordon*, 2021 WL 2269503, at *4 ("The Settlement Agreement's injunctive relief provides class members with some relief, while allowing them each to pursue defendant individually for damages in the future."). Here, because this is a settlement under Rule 23(b)(2), the Released Claims expressly "do not include claims for damages or other monetary relief." S.A. § 1.10. Thus, the release is narrowly tailored, preserving every Settlement Class Members' right to pursue their own damages claims. *See e.g., Selby v. Principal Mut. Life Ins. Co.,* No. 98 CIV. 5283(RLC), 2003 WL 22772330, at *3 (S.D.N.Y. Nov. 21, 2003) (finding narrow release of class claims that allowed class members who believe they may have been injured by the alleged practice to pursue claims for monetary relief through individual or class suits weighed in favor or preliminary approval); *In re Yahoo Mail Litig.*, 2016 WL 8114216 (N.D. Cal. Mar. 15, 2016) (N.D. Cal. Mar. 15, 2016) (holding that a similar result obtained on behalf of a class of email users and settled under Rule 23(b)(2) was within the range of possible approval); *Campbell v. Facebook, Inc.*, Case No. 4:13-cv-05996-PJH, ECF No. 235 (N.D. Cal. Apr. 26, 2017) (same).

In negotiating the Settlement Agreement, Plaintiffs' counsel carefully considered the remedial measures and injunctive relief proffered to Settlement Class Members. Plaintiffs' Counsel Joint Decl. ¶ 25; S.A. § 3.1. Plaintiffs' counsel balanced the Settlement Agreement against possible outcomes of a trial on the merits. *Id.* ¶¶ 30-31. Here, even a complete victory against a Defendant incapable of satisfying a judgment consistent with the claimed damages would be, as a practical matter, only a nominal victory. *Id.* ¶ 31. Under these circumstances, the best Class Members might be able to hope for would be remedying the past violations and enjoining its future

use of Location Data in the manner challenged here. *Id.* The Settlement accomplishes both of those goals now, without the risks, costs, and delay described above. *Id.*

Plaintiffs' counsel weighed these risks, in addition to the normal perils of litigation, in reaching the Settlement. *Id.* ¶¶ 30-31. Plaintiffs' counsel carefully considered the changes to the Defendant's business practices and agreement to refrain from unlawful practices in the future. *Id.* Where a settlement assures immediate relief to class members (in this case, immediate remedial measures and injunctive relief), and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," the Settlement is reasonable. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, *5 (S.D.N.Y. Mar. 24, 2008) (internal citation omitted). Just so here.

Particularly in light of Kochava's financial condition, the relief achieved here satisfies the fourth *In re Bluetooth* factor. Though Plaintiffs believe in the merits of their case, settlement here avoids this significant uncertainty while ending the challenged conduct without sacrificing any Settlement Class Member's right to pursue damages.

These factors sharply weigh in favor of preliminary approval.

### C. Effectiveness of Any Proposed Method of Distributing Relief and Any Agreement Required to Be Identified.

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective," while Rule 23(e)(2)(C)(iv) requires identification of any agreement under Rule 23(e)(3). Because of the nature of the remedial and injunctive relief in this Settlement, these factors are neutral. *See, e.g., Liberty Res., Inc. v. City of Philadelphia*, No. CV 19-3846, 2023 WL 3204018, at *8 n5 (E.D. Pa. May 1, 2023).

### D. The Terms of any Proposed Award of Attorney's Fees.

The Court also considers the "terms of any proposed award of attorney's fees, including

timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the Settlement, if Plaintiffs' counsel is appointed Class Counsel, they will apply for a fees and costs award not to exceed $1,500,000 to cover their attorneys' fees and reasonable litigation expenses. S.A. § 6.4. This sum is approximately equivalent to Plaintiffs' counsels' fees and costs in this matter, without any multiplier. The Parties addressed the issue of attorneys' fees and expenses only after they had reached an agreement in principle with respect to the substantive terms of the Settlement, including the proposed injunctive relief, and recognition of remedial measures. The Settlement Agreement is in no way contingent upon the Court's award of attorneys' fees and costs. *Id.*, § 6.3. Indeed, the Parties have agreed to accept as final, and not appeal, any award of attorneys' fees and costs up to the $1,500,000 cap. *Id.* Plaintiffs' counsel will not receive any funds until the Court has granted their fee request.

### E.  The Settlement Treats Settlement Class Members Equitably.

Finally, the proposed Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, there is no preferential treatment for any members of the Settlement Class as the remedial and injunctive relief applies uniformly to benefit all members of the Settlement Class.

### F.  Defendant Lacks the Ability to Withstand a Greater Judgment Consistent with the Claimed Damages.

From the beginning, Plaintiffs' complaint primarily sought declaratory and injunctive relief, because it was critical important that Kochava cease its alleged use of consumers' Covered Information and build profiles reflecting their movements over time, thereby invading their privacy. After extensive discovery and disclosure of Defendant's financial situation and lack of insurance coverage to Plaintiffs' counsel, it became clear that Defendant would not be able to withstand a large monetary judgement consistent with the claimed damages or to fund an adequate

monetary settlement. *See* Plaintiffs' Counsel Joint Decl. ¶¶ 14, 31. Through review of publicly-available information and formal and informal discovery, Plaintiffs' counsel estimates that the proposed Class is comprised of multiple millions of individuals. *Id*. ¶ 31. With statutory damages of *at least* $2,500 per Class member, any judgment would be in the billions of dollars. Moreover, Kochava's representations about its finances—made in good faith and supported by documentary evidence—support the conclusion that it does not have the ability to fund a fair and reasonable damages settlement for a Class comprised of millions of individuals. *Id.* Thus, this factor favors preliminary approval.

Consequently, the relevant factors under Rule 23(e)(2) and *In re Bluetooth* strongly support approval. As such, this Court should find that it is likely to approve the Settlement.

## VII. The Court Should Conditionally Certify the Settlement Class.

Plaintiffs respectfully request that the Court conditionally certify the Settlement Class for purposes of effectuating the Settlement. The proposed Settlement Class satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, and at least one of the requirements in Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); Newberg, *supra*, at § 13:18. The certification requirements are met, and Defendant consents to provisional certification for settlement purposes. *See Tiro v. Public House Investments, LLC*, 2013 WL 2254551, at *3 (S.D.N.Y. May 22, 2013) ("[w]hen the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.") (citing Newberg § 11.27).

### A. The Class Is Sufficiently Numerous.

Rule 23(a)(1) requires the class be sufficiently numerous. Generally, courts will find numerosity is satisfied where a class includes at least 40 members. *See, e.g., Celano v. Marriott*

*Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members). Here, the Settlement Class is defined as "All persons over the age of 18 in the United States whose data, including but not limited to their geolocation data, was sold by Kochava without their consent." S.A. § 1.13. Based on the exchange of information conducted in this Action, Plaintiffs have assessed that the Settlement Class consists of millions of individuals, making joinder of all members of the class impractical. Plaintiffs' Counsel Joint Decl. ¶ 31. Thus, Rule 23(a)(1) is satisfied.

### B.  Several Questions of Law and Fact Are Common to the Class.

Rule 23(a)(2) requires "questions of law or fact common to the class." This threshold is satisfied if the question is "capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. A single common question satisfies the commonality inquiry. *Id.* at 359. "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir.2008)

There are numerous questions of law and fact common to Plaintiffs and the Settlement Class Members, capable of class wide resolution, and susceptible to common proof, *e.g.*, (1) whether Kochava's sale of geolocation data without consent constitutes unjust enrichment and a violation of Plaintiffs' rights (2) whether Kochava's practices violated the Washington Consumer Protection Act; and (3) whether Kochava should be enjoined from disclosing Plaintiffs' and Settlement Class Members' location data. Rule 23(a) is satisfied.

### C.  The Class Representatives' Claims are Typical of the Settlement Class Members.

Rule 23(a)(3) requires that the representative parties' claims be typical of those of the class.

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir.2012) (internal quotation marks and citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (internal citation omitted).

Here, Kochava directed the same conduct, which Plaintiffs allege violates their rights, at Plaintiffs and all Settlement Class Members. Plaintiffs' claims arise from the same set of facts and the same theory of liability as the claims of the Settlement Class Members. Rule 23(a)(3) is therefore satisfied. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 604 (C.D. Cal. 2012) (finding typicality and noting that "thousands of potential class member claims are potentially subject to these same legal defenses, and therefore Ow and Healey are not necessarily atypical representatives."); *Meyer v Portfolio Recovery Assocs.*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (similar).

### D.  The Proposed Class Representatives and Class Counsel Have and Will Continue to Fairly and Adequately Represent the Settlement Class.

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the

action on behalf of the class. FRCP 23(a)(4); *see also, Ellis*, 657 F.3d at 985 (citing *Hanlon*, 150 F.3d at 1020).

The interests of Plaintiffs and Plaintiffs' counsel are not antagonistic to the Settlement Class. Plaintiffs and the Settlement Class Members all (1) downloaded and used apps in which Kochava's SDK was embedded. Therefore, Plaintiffs and the Settlement Class Members all have the same interest in obtaining remedial and injunctive relief and have no other cognizable, conflicting interests. Thus, Plaintiffs will fairly and adequately protect Settlement Class Members' interests.

Plaintiffs' counsel are comprised of four firms, each of whom are experienced and competent in the prosecution of complex class actions, including privacy class actions such as this one. *See* Plaintiffs' Counsel Joint Decl. ¶¶ 41-57.  Plaintiffs' counsel are capable and committed to achieving the best result for Plaintiffs and the Settlement Class and can draw on the firms' collective years of experience to do so. *Id.* ¶¶ 41-57 and Exhibits. 3-6 (firm resumes).

### E.  The Class Satisfies Rule 23(b)(2).

Class certification is appropriate where the defendant "has acted or refused to act on grounds generally applicable to the class," thereby making injunctive or declaratory relief appropriate on a class wide basis. Fed. R. Civ. P. 23(b)(2). The defining characteristic of a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360.

Here, Kochava has "engaged in the exact same conduct as to every class member. *Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJW, 2017 WL 6496803, at *15 (C.D. Cal. Dec. 11, 2017) ("for the very same reason the Court finds that common issues predominate with

respect to Transamerica's conduct in implementing the MDR increases, if Transamerica's conduct amounts to breach or another type of unlawful conduct, it may be appropriate to order injunctive or declaratory relief applicable to the pertinent classes of policyholders.") (citing *Yue v. Conseco Life Ins. Co.*, No. 08–CV1506–AHM–JTL–X, 2009 WL 10671418, at *5 (C.D. Cal. Dec. 7, 2009) ("[C]lass certification is appropriate because [d]efendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.")

As in other cases concerning violations of individuals' statutory rights, the Court should conclude that certification is appropriate pursuant to Rule 23(b)(2). *See Diaz v. Google LLC*, No. 5:21-cv-3080, ECF No. 78 (N.D. Cal. Oct. 31, 2022) (certifying for settlement purposes Rule 23(b)(2) class in case alleging privacy violations by defendant's COVID contact tracing application); *Roy v. Cnty. of Los Angeles*, No. CV1209012BROFFMX, 2016 WL 5219468, at *17 (C.D. Cal. Sept. 9, 2016), *aff'd sub nom. Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020) ("The Equitable Relief Classes seek only injunctive relief and, if the Roy Plaintiffs prevail on their claims, will apply generally to the class members as whole. Further, the Court is cognizant of the particular application of Rule 23(b)(2) classes in civil rights actions such as this."); *see also e.g.*, *Gaston v. LexisNexis Risk Solutions, Inc.*, 483 F. Supp. 3d 318, 342–43 (W.D.N.C. 2020) (certifying Rule 23(b)(2) class based on defendant's disclosure of private information about class members to a third-party in violation of a federal statute); *Welch v. Theodorides-Bustle*, 273 F.R.D 692 (N.D. Fla. 2010) (same).

## VIII.   Plaintiffs' Counsel Should be Appointed Class Counsel.

In appointing class counsel, the Court considers proposed counsel's (1) work in identifying or investigating the claims, (2) experience in handling class actions and the types of claims asserted

in the Actions, (3) knowledge of the applicable law, and (4) resources they will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). Plaintiff's counsel satisfies all four factors.

First, Plaintiffs' counsel have invested substantial time and resources into the prosecution of the Action, including (1) investigating the claims and filing three separate actions; (2) defeating Defendant's motions to dismiss; (3) serving discovery and pressing for responsive documents and evidence, including multiple meet and confers and related letters; (4) retaining and working with experts and forensic vendors; (5) attending a full-day mediation; and (6) engaging in months of settlement negotiations. Plaintiffs' Counsel Joint Decl. ¶¶ 7-27. In addition to the time, effort, and expense already expended, Plaintiffs' counsel will also spend the requisite time and expense necessary to fully implement the Parties' Settlement, address class member inquiries, and present the Settlement to the Court for final approval.

Second, Plaintiffs' counsel has extensive experience and knowledge in prosecuting other similar consumer class actions involving privacy violations. *Id.* ¶¶ 41-57 and Exs. 3-6. As highlighted above in Section II(D) and detailed in the Joint Declaration of Plaintiffs' counsel, Plaintiffs' counsel has particularized knowledge of class litigation, including cases involving data privacy. Their skill and substantial experience in handling complex class actions have added much to this case. *Id.*

These efforts secured a substantial Settlement Agreement comprised of immediate remedial measures and injunctive relief. The Court should therefore appoint Gary M. Klinger, Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg"); Daniel O. Herrera, Cafferty Clobes Meriwether & Sprengel LLP; Kas L. Gallucci, Law Offices of Ronald A. Marron; and Julian Diamond, Bursor & Fisher, P.A. as Class Counsel.

## IX.    The Notice Program Is Adequate.

The Settlement seeks injunctive relief, and Plaintiffs seek certification of Settlement Class pursuant to Rule 23(b)(2). Accordingly, notice is discretionary, not mandatory. Fed. R. Civ. P. 23(c)(3) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class. (emphasis added)); *Dukes*, 564 U.S. at 362 ("The Rule provides no opportunity for . . . (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *Stathakos v. Columbia Sportswear Co., et al.* (N.D. Cal. Jan. 25, 2018) 2018 WL 582564, at *3-4 ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required."). The key is that the notice be reasonable. *Wal-Mart Stores*, 396 F.3d at 113.

Nevertheless, the Parties have agreed to provide publication notice to members of the Settlement Class. The Notice Program will publicize notice via fair, well-crafted banner ads to direct attention to the Settlement Website and reach Settlement Class Members on selected websites, social media platforms, or apps where Settlement Class Members are likely to visit. S.A. § 5.3. The Settlement Website will include at least the following information: (i) stand-alone descriptions of the business practice changes; (ii) a summary of the Action and the settlement terms; (iii) a "Contact Us" page with Notice Administrator and Class Counsel information; (iv) the Settlement Agreement, motions for approval and for attorneys' fees, the Third Amended Complaint, and any other important documents in the case; (v) important case dates and deadlines, including the objection deadline; (vi) a summary of Settlement Class member rights, including how to object to the Settlement; and (vii) the date, time, and location of the Final approval hearing. *Id*. ¶ 5.2. Additionally, the Notice Program will establish a toll-free telephone line for Settlement Class Members with an IVR system to provide Settlement Class Members with responses to

frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week. The Court should conclude that the Notice Program is satisfactory in this 23(b)(2) settlement. *See Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059, at *9 (S.D.N.Y. June 26, 2018) (approving notice program for a Rule 23(b)(2) settlement that consisted of, *inter alia*, a website and an automated toll-free hotline about the action).

## VI.    <u>CONCLUSION</u>

For these reasons, Plaintiff respectfully requests the Court enter an order: (1) provisionally certifying the Settlement Class, (2) preliminarily approving the Settlement, including all exhibits, (3) appointing Plaintiffs Cindy Murphy, Scott Connelly, Jenny Watson, Adriana Ingram, Shahnaz Zarif, Sheri Bate, and Julie Maattala as Class Representatives, (4) appointing Gary M. Klinger, Milberg Coleman Bryson Phillips Grossman PLLC; Daniel O. Herrera, Cafferty Clobes Meriwether & Sprengel LLP; Kas L. Gallucci, Law Offices of Ronald A. Marron; and Julian Diamond, Bursor & Fisher, P.A. as Class Counsel, (5) appointing Angeion as Class Administrator, (6) approving the form and manner of Notice, and (7) approving the proposed schedule of events, and (8) scheduling a Final Approval Hearing.

Dated:  January 30, 2025                    Respectfully submitted,

                                                */s/ Gary M. Klinger*
                                                Gary M. Klinger (admitted *pro hac vice*)
                                                gklinger@milberg.com
                                                **MILBERG COLEMAN BRYSON PHILLIPS**
                                                **GROSSMAN PLLC**
                                                227 W. Monroe Street, Suite 2100
                                                Chicago, IL 60606
                                                (866) 252-0878

Daniel O. Herrera (*pro hac vice* app forthcoming)
Nickolas J. Hagman (*pro hac vice* app forthcoming)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

Kas L. Gallucci (admitted *pro hac vice*)
Alexis M. Wood (admitted *pro hac vice*)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, California 93103
kas@consumersadvocates.com
alexis@consumersadvocates.com

Mark A. Ellingsen
**WITHERSPOON BRAJCICH MCPEE, PPLC**
6500 N. Mineral Drive, Suite 103
Coeur d'Alene, Idaho, 83815
Tel: 208-927-4001
mellingsen@workwith.com

*Attorneys for Plaintiffs and the Proposed Class*

`

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January 2025, a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure via CM/ECF on all counsel of record.

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

*/s/ Gary M. Klinger*
Gary M. Klinger